MERTON W. DAVIS, ADMR. *v.* HENRY RAYMOND.

November Term, 1930.

Present: POWERS, C. J., SLACK, MOULTON, WILLCOX, and THOMPSON, JJ.

Opinion filed January 7, 1931.

*Raymond Trainor* and *Paul Gilioli* for the plaintiff.

*M. G. Leary* and *Guy M. Page* for the defendant.

SLACK, J. This action is brought by the personal representative of Merton John Davis, deceased, for the benefit of his next of kin in accordance with the provisions of G. L. 3315. Verdict and judgment were for the defendant, and the case is here on plaintiff's exceptions.

The accident out of which the suit grows happened in the city of Burlington on what is known as Shelburne Road near the junction of South Union and St. Paul Streets, about 6.45 o'clock in the evening of March 31, 1927.

It appears from a plan introduced in evidence by the plaintiff, and the evidence of the engineer who made it, that South Union Street is east of St. Paul Street and that Shelburne Road is practically a continuation south of these two streets; that the construction of the street where South Union and St. Paul Streets intersect is such that the south end of the tract of land that lies between them is "U" shaped instead of "V" shaped; that two hundred and twenty-one feet south of the curb at the

junction of these streets, and on the east side of Shelburne Road, near the curb, is a water cap; that this water cap is in front of the Finney House, so-called; that the south side of this house is about eighteen feet south of the water cap; that one hundred and twenty feet north of the water cap, measuring on the east curb of the street, is an electric street light. This light, as we understand the plan, is over the street, about seventeen feet from the east curb, and in nearly a direct line between the place where plaintiff's witness Buxton was when he claims to have seen the intestate and the place where he located the latter.

Buxton testified that on the evening of the accident he was on the sidewalk at the junction of South Union and St. Paul Streets; that he traveled south along South Union Street to the junction and turned the corner into St. Paul Street; that just before he made the turn he saw a boy on a tricycle near the curb on the east side of Shelburne Road near the Finney House, or a little south of it; and a car south of the boy; and that both were coming toward him. He testified further that as he was going around the corner he saw the light of a car flash on the trees and turned around and saw a car in the ditch on the west side of the street near a chestnut tree, and later discovered a boy and tricycle in front of the car.

For the purpose of laying a foundation for the admission of the evidence of persons who made a test of the visibility of certain objects in the immediate vicinity of where the accident occurred about 9 o'clock in the evening of October 6, 1927, the defendant called as a witness one Frank Hartwell who testified that he was in charge of the United States Weather Bureau at Burlington; that he had been connected with the Weather Bureau since 1901, and with the Burlington station for the last ten years; that his record showed that the sun set at 6.18 the night of the accident; that it was cloudy that night, and in his judgment would be rather dark at 6.45; that at the time the tests were made, the sky was clear, the moon in the first quarter, and that it set just after midnight. He also testified that it was his business to study weather conditions, visibility, etc., and that he was "pretty closely in it at all times"; that he was doing that "sort of work all the time"; that he made observations for visibility for the records and in so doing observed the conditions of light and darkness and that he had driven a car for the last fifteen years, day and night; that he had knowledge based upon

his training and experience concerning the effect of the moon in the first quarter upon visibility, and the effect upon visibility of cloudiness at sunset.

He was then asked: "Q. Have you an opinion, based upon that knowledge and experience as to the comparative condition of visibility of light and darkness between nine o'clock p.m. on the 6th day of October, 1927, and March 31, 1927, at about 6.45 p.m., taking into consideration the weather conditions as to which you have testified and which appear upon the records introduced here in evidence?"

and subject to the plaintiff's objection and exception answered that he had, and that there would be practically no difference.

The grounds of the plaintiff's exception were: (1) That the witness was not competent to give an opinion based on the matters assumed in the question; (2) that the conditions that existed at 6.45 p.m. March 31 were not the same as those that existed at 9.00 p.m. October 6; (3) that the leaves of the trees were different the night of the accident than they were on October 6; (4) that the electric lights did not shine the same on a moonlight night the 6th of October as they did on a cloudy evening the 31st of March and (5) that the atmospheric conditions were not the same on the two occasions.

The question of a witness' competency is for the determination of the court. *Cairns* v. *Mooney,* 62 Vt. 172, 19 Atl. 225; *Chadwick* v. *Wiggins,* 95 Vt. 515, 116 Atl. 74; *Rutland Sash & Door Co.* v. *Gleason,* 98 Vt. 215, 221, 126 Atl. 577; *Holbrook Grocery Co.* v. *Armstrong,* 97 Vt. 197, 122 Atl. 458. It is like the question whether a communication is privileged. *Childs* v. *Merrill,* 66 Vt. 302, 29 Atl. 532; whether a confession is voluntary, *State* v. *Gorham,* 67 Vt. 365, 31 Atl. 845; whether ancient field books, maps, plans, and photographs are sufficiently authenticated, *Hassam* v. *J. E. Safford Lumber Co.,* 82 Vt. 444, 74 Atl. 197; *State* v. *Lapan,* 101 Vt. 124, 135, 141 Atl. 686; and many such cases, all of which come within the general rule that when the question of admissibility depends upon a preliminary fact, that fact is for the court. 1 Wig. on Evidence, par. 487; 1 Elliot on Evidence, par. 28. And when the status of the evidence, as here, fairly tends to sustain the court's ruling, it is not reviewable. *Rutland Sash & Door Co.* v. *Gleason, supra; Capital Garage Co.* v. *Powell et al.,* 97 Vt. 204, 210, 122 Atl. 423.

It should be noted that the witness was not called upon to, nor did he, go farther than to give his opinion respecting the comparative visibility on the two occasions, based solely on the season, the position of the moon, and the weather conditions; in other words, whether the condition of light and darkness in that general locality was the same, or different, at the time of the accident and the time when the tests were made.

Since this is so there is no merit to the third and fourth grounds of the exception. This is also true of the second ground, unless by the conditions there referred to is meant the weather conditions, etc., and if so it is disposed of by what has been said. There was no error in the admission of this evidence.

■ Following the testimony of Hartwell, the defendant introduced evidence to show that about nine o'clock in the evening of October 6 a boy of apparently the same age as the intestate at the time of the accident was placed on the tricycle which the intestate was then riding at three different points near the east curb on Shelburne Road, namely, near the water cap in front of the Finney House, opposite an elm tree that stood forty-two feet north of the water cap and opposite two poles that stood seventy-six and eight-four feet, respectively, north of the water cap, and that a flash-light signal was given at each place when the boy and tricycle were in position, for the purpose, as later appeared, of attracting the attention of persons who were on the curb at the junction of South Union and St. Paul Streets, near the place where Buxton stood when he claimed to have seen the intestate in front of the Finney House or south of it, and that although such persons saw the signals they were unable to see the boy when he was in front of the Finney House or opposite the elm tree, but did see *something* when he was opposite the two poles. The evidence of the latter witnesses was excepted to on the ground that the experiment was made at a different hour of the night and under entirely different circumstances and conditions than those that existed at the time of the accident. This exception is too general to avail the plaintiff. It did not call the court's attention to a single particular wherein it was claimed the conditions were different. Whether this exception and the next one to be considered are relied upon by the plaintiff is not clear from his brief. It is argued, generally, that it did not appear that the electric lights were shining the same on both occasions, or that there were the

same number of lights, or that the lights gave the same visibility, that the foliage on the trees in the vicinity of the accident was obviously different, and that "probably the reflection of the moon and light coming concurrently made it rather bad to see distinctly."

As far as this may have been intended to apply to the evidence of the witness Hartwell, it is already disposed of; as far as it may have been intended to apply to the evidence of the witnesses who made the test, the exception was not sufficiently specific to present the claim now made. *Eastern States, etc., League* v. *Estate of Vail*, 97 Vt. 495, 514, 124 Atl. 568, 38 A. L. R. 85; *Miles* v. *Vermont Fruit Co.*, 98 Vt. 1, 16, 124 Atl. 559; *Higgins, Admr.* v. *Metzger*, 101 Vt. 285, 296, 143 Atl. 394. In the latter case, to be sure, the question arose under a motion to set aside a verdict, but the principle involved was the same.

Mr. Ryan, one of the witnesses who made the test, testified that from the curb at the junction of South Union and St. Paul Streets he could not see the boy on the tricycle either when the latter was in front of the Finney House or opposite the elm tree. This evidence was excepted to on the grounds that it did not appear that the boys were the same age, size, or build, or dressed the same, or that the witness had the same eyesight as Buxton. While it did not appear that the boys were the same size and build, or dressed the same, it did appear that the boy who took part in the test was apparently about ten years old, about the age of the intestate at the time of the accident, and that the witness' eyesight was all right so far as he knew, although he wore glasses to read with but not all the time.

The admissibility of evidence of this character does not depend upon exact similarity of conditions. It is enough if they are sufficiently similar to make them essentially the same. *State* v. *Winters*, 102 Vt. 36, 145 Atl. 413; *Thayer* v. *Glynn*, 93 Vt. 257, 106 Atl. 834; *State* v. *Flint*, 60 Vt. 304, 319, 14 Atl. 789; *State* v. *Bean*, 77 Vt. 384, 402, 60 Atl. 807; *Ide* v. *Boston & Maine Railroad*, 83 Vt. 66, 98, 74 Atl. 401. Then, too, in cases of this sort much must necessarily be left to the discretion of the trial court, and its action will not be disturbed unless manifestly wrong. *State* v. *Winters, supra; Thayer* v. *Glynn*,

*supra; Dow* v. *Bulfinch,* 192 Mass. 281, 78 N. E. 416; *Ducharme* v. *Holyoke Street Railway Co.,* 203 Mass. 384, 89 N. E. 561.

*Judgment affirmed.*